**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| CHARLES WOODBURY JR., | ) | Case No. EDCV 11-00314 JPR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM DECISION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff Charles Woodbury Jr. brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying him Supplemental Security Income ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed October 27, 2011. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on November 19, 2008.[1] (Administrative Record ("AR") 130-36.) Plaintiff listed June 1, 1991, as the onset date of his disability. (AR 130.) The Commissioner denied benefits on February 17, 2009. (AR 52-56.) Plaintiff submitted a request for reconsideration on March 11, 2009. (AR 57.) On April 17, 2009, the Commissioner denied Plaintiff's request for reconsideration. (AR 58-63.) On May 5, 2009, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 66.)

On May 11, 2010, Plaintiff's hearing proceeded before ALJ Jay Levine.[2] (AR 22-47.) The ALJ denied benefits on June 24, 2010. (AR 9-21.) On July 13, 2010, Plaintiff requested Appeals Council review. (AR 4.) The Appeals Council denied Plaintiff's request for review on January 29, 2011. (AR 1-3.) On February 24, 2011, Plaintiff lodged the instant Complaint.

Plaintiff does not challenge any aspect of the ALJ's decision other than his determination, at step five of the process, that Plaintiff could perform certain jobs. Plaintiff's only claim is that the vocational expert's ("VE's") testimony conflicted with the description of the jobs in the Dictionary of Occupational Titles ("DOT") and the ALJ did not clarify the inconsistencies, and therefore the Commissioner's decision must be reversed and the matter remanded for a new hearing. (J. Stip. at 3-4.)

---

[1] Plaintiff had previously sought benefits, on October 16, 2007, and was denied. (AR 9.)

[2] Plaintiff was represented by counsel at the hearing. (AR 24.)

2

**FACTUAL HISTORY**

**A.  Generally**

Claimant was born on January 23, 1957. (AR 17.) He has a 12th-grade education. (Id.) He claims to have been disabled since June 1, 1991, based on a seizure disorder, and not to have worked since then.[3] (AR 14.)

**B.  The Medical Evidence**[4]

As the ALJ found, many if not most of Plaintiff's recent medical tests performed by his treating physicians produced normal results despite Plaintiff's seizure disorder. (AR 14-16.) On July 7, 2007, a CT scan of Plaintiff's head was negative for abnormalities. (AR 282-83.) On October 12, 2007, the results of an EEG[5] test were within normal limits. (AR 279.) On December 18, 2007, Plaintiff visited the Loma Linda VA Medical Center emergency room, where the results of a physical and mental examination were normal. (AR 268-72.) On March 5, 2008, Plaintiff was examined by Dr. Tom Bohr, a neurologist. (AR 264-67.) The doctor found that Plaintiff was alert and oriented, had normal language and speech, had 5/5 motor strength, had normal gait, and possessed intact sensory perceptions. (Id.) He

---

[3] The Court notes, however, that Plaintiff apparently told a doctor in January 2009, after he filed his claim for Social Security benefits, that he worked for a year in 1998 repairing lawn equipment. (AR 290-91.)

[4] Plaintiff does not generally contest the ALJ's determinations concerning the medical evidence. (J. Stip. at 3.)

[5] Electroencephalogram tests measure and record the electrical activity of the brain and may detect seizures by showing changes in the normal pattern of the brain's electrical activity. Kathleen Deska Pagana & Timothy J. Pagana, Mosby's Manual of Diagnostic & Laboratory Tests 573 (4th ed. 2010).

found no objective evidence of epilepsy, and two EEGs were normal. (<u>Id.</u>) Plaintiff was treated at the Loma Linda emergency room on April 21, 2008, but the doctors there found that he was neurologically within normal limits, with no head trauma, dizziness, or slurred speech. (AR 259-61.) On October 22, 2008, two EEGs were again normal, and his seizures were found to have decreased in frequency as a result of various medications. (AR 220.) On November 7, 2008, an ophthalmologist found that plaintiff's eyesight was 20/20 and his refractive error could be corrected through the use of over-the-counter reading glasses. (AR 216-17.) On January 20, 2010, an exam found the frequency of Plaintiff's seizures to be reduced. (AR 317.)

Plaintiff's mental state was also generally assessed to be normal. On December 18, 2007, his mental state was assessed as normal during the visit to the Loma Linda emergency room. (AR 271.) At the April 21, 2008, exam, his mental status examination was overall "within normal limits" (AR 261); the same was true for an August 30, 2008, visit (AR 236). On January 28, 2009, Plaintiff was examined by a psychologist, who diagnosed "personality disorder not otherwise specified with antisocial features and borderline intellectual functioning." (AR 293.) She found that he was "not severely mentally impaired, indicating only some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well." (AR 16, 290-94.) As the ALJ noted, some of the psychologist's tests indicated "memory malingering" reflecting "attempt[ ] to simulate cognitive impairment." (AR 16, 293.)

//

4

//

**C.    Hearing Testimony**

Plaintiff and his mother testified at the hearing.  Plaintiff's mother testified that she and Plaintiff "do the laundry together and keep the house clean.  [Plaintiff] [c]leans the bathrooms."  (AR 44.)

The ALJ posed the following hypothetical to VE David Rinehart:

> Assuming a hypothetical individual of claimant's age, education, no prior work experience in the last 15 years, assume this person has – is capable of a medium range of work, no work on dangerous machinery, no work on unprotected heights, no extreme heat, to climb stairs, but no ladders, this person is restricted to entry-level work, and no fast-paced work such as conveyer belt or piece work.  Is there any work in the regional or national economy such a person could perform?

(AR 44-45.)

The VE responded that Plaintiff could perform the work of floor waxer, day worker, and production helper.  (AR 45.)  He testified that all were consistent with the DOT.  (Id.)

Plaintiff interrupted to say that "[t]hey won't let me work any kind – around any kind of chemicals or sharp tools or objects or working on a computer that all the medication I'm on it's – like a waxer, something made out of soaps and that chemical, it's too strong a chemical."  (AR 46.)

The ALJ then modified the hypothetical for the VE to exclude any work that involved "industrial level fumes, gasses, particles."  (Id.)  The VE testified that Plaintiff could still perform the jobs of production helper and floor waxer, but he would not be able to be

a day worker because they "use[] chemicals, sprays, and what not." (Id.)  The VE added that the hypothetical person could also perform the job of retail bagger, which was also consistent with the DOT. (Id.)

**D.    The ALJ's Decision**

In his written decision issued June 24, 2010, the ALJ found that Plaintiff was not entitled to SSI.  He found that Plaintiff had a severe impairment, "seizure disorder vs. pseudo-seizure disorder (20 CFR 416.971 et seq.)."  (AR 11.)  The ALJ described Plaintiff's Residual Functional Capacity ("RFC") as follows:

> [P]erform a significant range of medium work as defined in 20 CFR 416.967(c) except the claimant can lift and/or carry 50 pounds occasionally, and 25 pounds frequently; the claimant can stand and/or walk 6 hours in a 8-hour workday; the claimant can sit intermittently during the remaining time in the workday; the claimant is precluded from working at unprotected heights or dangerous machinery; the claimant is precluded from climbing ladders but can climb stairs; the claimant is precluded from working with industrial level gases, fumes, particulates, extreme heat, or fast-pace work such as conveyor belt or piece work; and the claimant can perform entry level work such as simple repetitive tasks.

(AR 12-13.)

The ALJ wrote that

> [t]he vocational expert testified that given all these factors the individual would be able to perform the requirements of representative occupations such as floor waxer, DOT 381.687-034, medium, unskilled, svp 2, with 5,900

jobs in the regional economy and 154,000 in the national exonomy; day worker, DOT 301.687-014, medium, unskilled, svp 2, with 6,700 jobs regionally and 109,000 jobs nationally; and production helper, DOT 529.686-070, medium, unskilled, svp 2, with 15,000 jobs regionally and 390,000 jobs nationally. Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate . . . .

(AR 17-18.)

In making the "not disabled" determination, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 14.) The ALJ noted that many of Plaintiff's medical tests had showed normal functioning. (AR 14-15.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, a court may not substitute its judgment for that of the Commissioner, and the ALJ's decision must be upheld. Reddick, 157 F.3d at 720-21.

## DISCUSSION

### The ALJ Did Not Err When He Found That Plaintiff Could Perform The Jobs Of Floor Waxer and Production Helper[6]

Plaintiff contends that the ALJ erred in finding that Plaintiff could perform work as a floor waxer or production helper because the ALJ's findings concerning Plaintiff's RFC conflicted with the description of these jobs in the DOT and with the VE's testimony, and the ALJ did not clarify the inconsistencies with the VE. (J. Stip. at 4.) Specifically, Plaintiff asserts that he cannot perform the job of floor waxer because it requires exposure to chemicals or the job of production helper because it requires conveyer-belt work. (Id.) The ALJ found that Plaintiff could not work around

---

[6] The Commissioner concedes that the ALJ erred in finding Plaintiff capable of work as a day worker.

1  "industrial-level fumes, gasses, particulates" and should not do
2  "fast pace work such as conveyor belt or piece work." (AR 13.)
3      The ALJ may rely on expert testimony that contradicts the DOT if
4  the record contains persuasive evidence to support the deviation.
5  See <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995);
6  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1042 (9th Cir. 2008).
7      1.  <u>Floor Waxer</u>
8      The DOT defines floor waxer as follows:
9      Cleans, waxes, and polishes floors by hand or machine:
10     Removes dirt and blemishes from floor, using various cleaning
11     solvents and compounds, according to composition of floor.
12     Applies paste or liquid wax to floor with rags or machine.
13     Polishes floor with electric polishing machine or weighted
14     brush.
15 DOT 381.687-034, 1991 WL 673262 (4th ed. 1991).
16     On its face, this definition does not conflict with the ALJ's
17 finding that Plaintiff cannot work with "industrial-level" chemicals,
18 as "cleaning solvents and compounds" need not be industrial level.
19 Indeed, the DOT description notes that "toxic caustic chemicals" are
20 not involved in the job. <u>Id.</u> Although Plaintiff stated that he
21 cannot work with "any kind of chemicals," nothing else in the record
22 supports that assertion, and the ALJ specifically found that
23 Plaintiff was not credible to the extent his testimony conflicted
24 with the RFC. Moreover, it is a fair inference from the record that
25 Plaintiff works with soaps and chemicals in helping his mother do the
26 laundry and clean bathrooms.
27     For these reasons, Plaintiff's claim that the ALJ erred when he
28 concluded that Plaintiff could perform the job of floor waxer is

9

rejected. Further, the resolution of this issue is dispositive of Plaintiff's appeal. According to the VE, there were 5900 floor waxer jobs locally and 154,000 nationally. (AR 45.) Clearly, these numbers are sufficient to support the ALJ's decision that there were a significant number of jobs in the economy that Plaintiff could perform. See Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (holding 2300 jobs in San Diego county a significant number); Barker v. Sec'y of HHS, 882 F.2d 1474, 1479 (9th Cir. 1989) (holding 1266 jobs in local area a significant number). Thus, even assuming the ALJ erred in his determination that Plaintiff could perform the work of a production helper (see below), reversal would not be warranted. See Gray v. Comm'r, 365 Fed. App'x 60, 63 (9th Cir. 2010) (affirming ALJ's finding that Plaintiff could find work because, "[e]ven assuming, arguendo, that two of the three jobs named by the [vocational expert] . . . were inconsistent with [plaintiff's residual functional capacity]," third job was not and was enough to support ALJ's conclusion).

    2.   Production Helper

The DOT defines Production Helper in pertinent part as follows:
> Feeds machine hoppers with ingredients, transports and packs finished products, and performs any combination of following tasks in food processing and packaging establishment: Dumps prepared ingredients into hoppers of grinding and mixing machines. Transfers finished products and raw materials about plant and warehouse, using handtruck. Stacks processed food in warehouse and coolers. Packs food products in paper bags and boxes. Loads packaging machines with bags, cans, and jars. Verifies weights of filled containers emerging

>  from packaging machines. Removes foreign material from food on conveyor belts. Sprinkles grated cheese and other flavoring on foods.

DOT 529.686-070, 1991 WL 674732 (4th ed. 1991).

Plaintiff contends that the DOT description conflicts with the ALJ's RFC, which precluded "fast-pace work" such as "conveyor belt or piece work." Obviously, however, not all production-helper jobs involve conveyor-belt work, and not all conveyor-belt work is fast paced. The DOT description itself says that the job involves "any combination of" the listed items. The ALJ found that there are 390,000 production-helper jobs in the national economy. Some not-insignificant number of production-helper jobs must exist in the national economy that do not involve fast-paced conveyor-belt work. See Moncada, 60 F.3d at 524 (noting that DOT lists broad, general categories the subcategories of which may have fewer requirements). To the extent the DOT description is inconsistent with the ALJ's RFC findings, the error is therefore harmless.[7]

## CONCLUSION

The ALJ correctly determined that Plaintiff could perform the job of floor waxer. Thus, Plaintiff's contentions do not warrant remand.

---

[7] Any error was also harmless because the VE testified that Plaintiff could perform the job of retail bagger, and nothing in the DOT's description of that position is inconsistent with the ALJ's RFC determination. See DOT 920.687-014, 1991 WL 687964 (4th ed. 1991).

11

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 16, 2011

JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

---

[8] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."